UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LEWIS P. PERRAUT,  Case No. 1:12-cv-934

    Plaintiff,  Barrett, J.
                                        Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Lewis Perrault filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Plaintiff presents three claims of error, all of which the Defendant disputes.  Because it is supported by substantial evidence in the administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I.  Summary of Administrative Record**

Plaintiff applied for both disability insurance benefits ("DIB") and for supplemental security income ("SSI"), alleging a disability onset date of March 21, 2007.  Plaintiff's applications were denied initially and on reconsideration, after which Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ").  In October 2009, ALJ Donald Becher conducted an evidentiary hearing at which he heard testimony from Plaintiff, who was represented by the same counsel who represents Plaintiff before this Court.  (Tr. 115-135).  The ALJ continued that hearing in order to permit additional time for counsel to submit records, and to permit Plaintiff to attend a consulting examination.

In March 2010, ALJ Becher held a second hearing, at which he heard additional testimony from Plaintiff and from a vocational expert. (Tr. 75–114). After the March 2010 hearing, the ALJ issued a written decision in which he determined that Plaintiff was not disabled during the relevant time period. (Tr. 140-154). Plaintiff sought further review from the Appeals Council.

On November 19, 2010, the Appeals Council vacated the ALJ's decision and remanded for additional review. The Appeals Council specifically found error in the ALJ's failure to evaluate the treatment records of Dr. Magdalena Kerschner, which were relevant to Plaintiff's allegations of breakthrough neck pain. (Tr. 158). In addition, the Appeals Council directed the ALJ to: (1) "obtain updated medical evidence from the claimant's treating sources"; (2) "[f]urther evaluate the claimant's subjective complaints"; (3) "[g]ive further consideration to the claimant's maximum residual functional capacity"; and (4) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert." (Tr. 159).

In compliance with the remand from the Appeals Council, the ALJ conducted a third evidentiary hearing on May 23, 2011. (Tr. 31-74). On July 11, 2011, the ALJ issued a second written decision, again concluding that Plaintiff was not disabled. (Tr. 10-24). Plaintiff appealed, but this time the Appeals Council denied further review, leaving the ALJ's July 2011 decision as the Defendant's final decision.

. **II. Analysis**

   **A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are

2

both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for either DIB or SSI, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination,

3

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Claims of Error

#### 1. Reliance on the VE's Testimony

Plaintiff first complains that the ALJ erred by relying upon the VE's testimony. A VE's testimony in response to a hypothetical question that accurately portrays a claimant's impairments ordinarily provides substantial evidence to support the Commissioner's decision. *See Davis v. Sec'y of Health and Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1987). In this case, however, Plaintiff insists that substantial evidence does not exist, due to discrepancies between the VE's testimony and the DOT, and alternatively, due to the VE's failure to consider a more current available resource for job descriptions.

##### a. Alleged Discrepancies with DOT job descriptions

In response to a direct inquiry from the ALJ, the VE unequivocally testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 71-72). Plaintiff argues that the VE's testimony was actually inconsistent with the DOT.

In a hypothetical, the ALJ asked the VE to assume that Plaintiff was "limited to work that involves simple, routine, and repetitive tasks performed in a low-stress work environment, defined as free of fast paced production requirements, involving only

4

simple work-related decisions.  Few, if any, workplace changes.  No interaction with the general public.  And only occasional interaction with coworkers and supervisors." (Tr. 69).  Plaintiff asserts that the hypothetical most closely aligns with DOT Reasoning Level 1, which describes the ability to carry out simple one-or-two step instructions, and deal with standardized situations with occasional or no variables in or from situations encountered on the job.  In response to the ALJ's hypothetical, the VE opined that Plaintiff would be able to perform the requirements of several representative occupations, including those of a general office clerk, a security monitor, or a freight stock clerk.  However, Plaintiff now contends that two of those jobs require a higher level of reasoning than described in the hypothetical.  For example, the job of surveillance-system monitor requires a DOT Reasoning Level of 3, while the general office clerk job requires a Reasoning Level of 2.

It is not uncommon for a litigant to discover minor discrepancies between DOT descriptions and a vocational expert's testimony, but the Sixth Circuit has made clear that such variations will rarely provide grounds for remand.  In *Beinlich v. Com'r of Soc. Sec.*, 345 Fed. Appx. 163, 168, 2009 WL 2877930 *4 (6th Cir., Sept. 9, 2009), for example, the court explained that just because a VE's testimony concerning the existence of specified jobs is contrary to the precise description listed in the DOT "does not establish that [the jobs] do not exist."  Soc. Sec. Rul. 00-4p imposes an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT."  Only if the VE testifies that there is a conflict must the ALJ "obtain a reasonable explanation for...[the] apparent conflict."  *Lindsley v. Com'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009).

In *Lindsley*, a VE testified that the plaintiff could perform the job of a "light, unskilled production inspector," and that there was no conflict between his testimony and the DOT. *Id.*, 560 F.3d at 604. However, the plaintiff pointed out on appeal that the "occupations listed in the DOT do not include the job description of a 'light, unskilled production inspector.'" *Id.* at 604-605. The Sixth Circuit affirmed, finding no actual conflict given that "the DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs." *Id.* at 605. The use of different terminology, or the fact that the VE's job description did not "align perfectly with the DOT's listed occupation titles" is not evidence of a conflict. *Id.* Thus, once the VE credibly testified that there was no conflict between his testimony and the DOT, and plaintiff was afforded a full opportunity to cross-examine, the ALJ had no duty to interrogate him further. *Id.* at 606. Just as in *Lindsley*, in this case the ALJ satisfied his affirmative duty to ask the VE if his testimony was consistent with the DOT. The VE testified that his descriptions were consistent. (Tr. 71-72). No conflicts were identified, either by the VE or by the Plaintiff, until after the hearing.

The ALJ is not required "to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008); *see also Lindsley*, 560 F.3d at 606. Because Plaintiff did not object to the conflicts at the hearing, the ALJ had no duty to explain how any conflict was resolved. *See generally Coleman v. Astrue*, 2010 WL 4094299 (M.D. Tenn. Oct. 18, 2010)(discussing cases requiring remand based on conflicts between VE testimony and DOT). In sum, no reversible error exists. To the extent that any discrepancy exists between the DOT and the VE's testimony, it is not

6

grounds for remand because the ALJ satisfied his legal duty to inquire about conflicts at the time of the hearing.  *Accord Martin v. Com'r of Soc. Sec.*, 170 Fed. App'x 369, 374-75 (6th Cir. 2006).

Alternatively, it is unclear whether the hypothetical provided by the ALJ would truly preclude all positions at Reasoning Levels 2 or 3.  Although the hypothetical limited Plaintiff to "simple, routine and repetitive tasks," that description is not necessarily restricted to the "one-or-two step instructions" described at Level 1.  Nor does it clearly eliminate all ability to comply with "uninvolved written or oral instructions" as described at Level 2.  In other words, the undersigned would not agree that all jobs at Reasoning Levels 2 and 3 are necessarily precluded by the hypothetical.  But even if those jobs were precluded, the job of freight stock clerk would remain.  The VE testified that 402 such jobs exist locally, and that 47,000 exist nationally.  (Tr. 70).

Arguably, the existence of the freight stock clerk job alone would provide a sufficient basis for affirming the non-disability determination. What constitutes a "significant number" of jobs must be determined on a case-by-case basis.  *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).  However, the Sixth Circuit has found as few as 125 jobs in a local area to be "significant."  *See Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990); *see also Martin v. Com'r of Soc. Sec.*, 170 Fed. App'x 369, 374-75 (6th Cir. 2006)(affirming where VE's testimony was inconsistent with the DOT as to two of three jobs that he testified plaintiff could perform, because the plaintiff failed to raise the conflict at the administrative level, and "the ALJ still could have reasonably found that Martin could perform the third position.").

### b. Use of DOT versus More Current Job Data

Plaintiff also complains that the VE should not have relied upon the "outdated" DOT information at all, but instead should have turned to the O*NET, a more current resource for job information. Plaintiff relies upon *Cunningham v. Com'r of Soc. Sec.*, 360 Fed. Appx. 606 (6th Cir. 2010), a split-panel decision not selected for publication in the Federal Reporter, for this proposition. In *Cunningham*, the majority remanded for further review of whether substantial evidence supported the Commissioner's decision, in part because the decision was based upon the plaintiff's ability to perform two jobs contained in the DOT that appeared to be "obsolete." The court reasoned that, despite the fact that the Commissioner's regulations specifically refer to the DOT, "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Id.*, 360 Fed. Appx. at 615. Judge Ryan dissented, expressing the view that "[i]t is not within this reviewing court's proper authority to locate evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness," and expressing his dismay over the majority's holding "that the expert's failure to consider this court's more favored data effectively nullified the 'reliability' of the expert's opinion." *Id.* at 616.

The *Cunningham* holding has not been widely adopted, and arguably represents a departure from established Sixth Circuit law and from the Commissioner's own regulations, which explicitly reference the DOT. *See* 20 C.F.R. §404.1566(d)(1); SSR 00-4p. In any event, *Cunningham* does not mandate the use of O*NET or any other more current job data except, possibly, in the relatively rare case in which the VE testifies to jobs that no longer exist. In short, *Cunningham* is not persuasive on the record presented here. *Accord Horsley v. Com'r of Soc. Sec.*, 2013 WL 980315 (S.D.

Ohio, March 13, 2013)(Barrett, J.)(distinguishing *Cunningham*); *Creech v. Astrue*, 2013 WL 427627 (S.D. Ohio, Feb. 4, 2013)(Bowman, M.J.).

### 2. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ improperly discounted his credibility. A disability claim can be supported by subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Com'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, the ALJ determined that Plaintiff's testimony as to his subjective symptoms "lack[s] credibility." (Tr. 22). In making this assessment, the ALJ relied in part on Plaintiff's daily activities:

> The evidence shows that the claimant was independent for basic living activities a month after his April 2007 right clavicle ORIF surgery…When the claimant saw Dr. Leisgang in January 2008, he said he was not using any medication, and described a range of activity including caring for his

9

> one-month old daughter, preparing meals, grocery shopping, driving, and talking with friends and with his sister on the telephone….

(Tr. 19; *see also* Tr. 22, describing activities "that included caring for his one-month old baby preparing meals, shopping, driving, and watching TV programs," with sufficient judgment to "make decisions, manage funds, and conduct his own living arrangements.").

In addition, the ALJ cited many inconsistencies between the objective medical evidence, clinical records, and Plaintiff's testimony at the hearing. The ALJ noted the March 2009 MRI studies that were partially "normal," and that his physician noted that the disc disease that was present failed to account for his reported symptoms. *Id.* The ALJ further noted that Plaintiff reported short-term but effective relief with injections of pain medication by Dr. Kerschner, with Plaintiff reporting a reduction in pain by 50-60%, but Dr. Kerschner also stating that a drug screen was negative for detectable levels of the Percocet that had been prescribed. After Dr. Kerschner performed radiofrequency ablation medial branch blocks in April 2010, Plaintiff reported to his primary care physician that he could walk up two flights of stairs and two to four blocks without resting. At the end of 2010, Plaintiff reported worsening back pain, but a repeat MRI contained findings similar to an earlier (2008) MRI. Plaintiff testified variously that he had "constant" neck pain (December 2010) but also that his neck pain would "come and go." (Tr. 19).

The ALJ further observed that Dr. Cohen reported that Plaintiff was likely non-compliant with post-operative restrictions, since a biceps tear found after shoulder surgery could only have resulted from lifting. (Tr. 19). Plaintiff's biceps tear was also inconsistent with Plaintiff's testimony that he could not, and would not, attempt to lift any

10

weight. (Tr. 22). Additional records reflected Plaintiff's motor strength, slow but otherwise normal gait, and lack of any restriction after surgery to repair an atrial septal defect. The ALJ questioned Plaintiff's report that he was scheduled for heart surgery at the time of his hearing, since his UK medical records showed angiography results that were "very nearly normal," with only mild findings for which smoking cessation and dietary modification were recommended. (Tr. 20).

The ALJ described Plaintiff's history of substance abuse and legal history of prescription fraud. (Tr. 20-21). Even in early 2011, the Plaintiff obtained a Xanax prescription (after first being turned down) only after claiming that he was unable to get in to see a psychiatrist until April. (Tr. 914). However, subsequent history confirmed that he never did obtain mental health treatment, and his ongoing medications did not include Xanax. (Tr. 21). The ALJ pointed out Plaintiff's "inconsistent" statements "regarding the nature and extent of his substance abuse." For example, Plaintiff denied use of marijuana since prior to 2000, and testified that he used cocaine only on one occasion for pain, in 2007 or 2008. However, medical records showed that Plaintiff used marijuana regularly for eight years, first used cocaine in 1979-1980, and used cocaine regularly for six months in 2008. (Tr. 22, 542).

Last, the ALJ cited other "inconsistencies in the record," such as "significant gaps in the claimant's treatment history," which Plaintiff was "unable to explain," and various records that indicated noncompliance with prescribed treatment. (Tr. 21). Although Plaintiff testified that he had required the use of a cane since February 2011, UK medical records after that date indicated that Plaintiff had no history of falls, and ambulated steadily without the use of any assistive devices. (Tr. 22).

11

Plaintiff contends that the ALJ erred by citing to his daily activities, because the ability to perform limited activities is not equivalent to the ability to perform work on a sustained basis for forty hours per week.  In addition, Plaintiff argues that the ALJ never explained how his reported daily activities were "inconsistent" with his claimed inability to perform even sedentary work.  He maintains that the ALJ unfairly ignored his testimony concerning all the things that he cannot do.  Plaintiff also points to his testimony that he naps daily from 11:00 a.m. to 12:30 p.m., and mostly sits in a recliner chair with a heating pad on his back, as statements that support his disability claim.

The fact that some of Plaintiff's testimony was consistent with disability, or that some consistent medical evidence exists, does not mean that the ALJ erred as a matter of law in drawing an adverse credibility inference.  *See generally, Kyle v. Com'r of Soc. Sec.,* 609 F.3d 847, 857 (6th Cir. 2010)("[E]ven if this Court had come to a different factual conclusion, it would not disturb the findings of the ALJ which are based on substantial evidence.").  The ALJ did not simply dismiss Plaintiff's complaints in cursory fashion, but detailed many instances of discrepancies in the records that led to his conclusion that Plaintiff's complaints were not fully credible.  The ALJ's reference to Plaintiff's daily activities – as one of many factors that were considered – was not error.  An ALJ is not only permitted to consider a claimant's level of daily activities in assessing his credibility, but is generally required to do so.  *See* 20 C.F.R. §404.1529(c)(3); *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.

### 3. Weight Given to Consulting Physicians' Reports

Plaintiff's last claim is that the ALJ erred by giving "great weight" to the opinions of a psychological consultant and a medical consultant.

12

### a. Psychologist Nicole Leisgang

First, Plaintiff complains that the ALJ erred when he relied upon the January 22, 2008 report of Nicole Leisgang, Psy. D. (Tr. 498-504).  Plaintiff reasons that Dr. Leisgang did not review any of the treatment notes of Ms. Peggy Foster, who treated Plaintiff for depressive disorder and anxiety, and who documented pain/anxiety attacks in her records.  (Tr. 534, 537, 539, 542, 616).  Ms. Foster also documented Plaintiff's depression and occasional suicidal thoughts.  (Tr. 535-536, 542).  Unlike Dr. Leisgang, Ms. Foster did not offer opinions concerning Plaintiff's work-related limitations.

Plaintiff fails to point to any specific clinical records of Ms. Foster that would have required the ALJ to reject Dr. Leisgang's opinions.  And, although Dr. Leisgang did not review the notes of Ms. Foster, the ALJ did review those notes.  In fact, the ALJ addressed those records in some detail, including Ms. Foster's reluctance to prescribe Xanax to Plaintiff and her refusal to prescribe him benzodiazepines under any circumstances, as well as her diagnoses of anxiety disorder and substance abuse in remission.  (Tr. 16-17, 20, 21).  The ALJ also referred to Ms. Foster's documentation that, despite claiming to suffer from panic attacks, Plaintiff did not describe a full panic attack when asked about his symptoms. In 2009, Ms. Foster noted some depression and irritability but that claimant reported that he was "generally okay."  (Tr. 21).  The ALJ also addressed evidence from state agency reviewing psychologist Dr. Orosz.  (Tr. 20, citing Tr. 506-522, 524-531).

The undersigned finds no error in the ALJ's reliance on the opinions of Dr. Leisgang, because Plaintiff has failed to demonstrate that those opinions were discredited or undermined by Nurse Foster's notes, or by other evidence to which Dr. Leisgang did not have access.  Substantial evidence supports the ALJ's determination

13

of Plaintiff's mental RFC.  Not only do the opinions of Dr. Leisgang support that RFC, but many of the additional records of Ms. Foster are consistent with Dr. Leisgang's opinions.

### b. Dr. Le

In a closely related argument, Plaintiff suggests that it was error for the ALJ to rely upon the opinions of Dr. Le.  (Tr. 20, citing Tr. 602-614).  Like Dr. Leisgang, Dr. Le did not have access to the entirety of Plaintiff's records, because his opinions were rendered on November 30, 2009.  The records not reviewed by Dr. Le included records from Dr. Kerschner, Dr. Matthew Recht, Highland District Hospital, Mercy Hospital, Adams County Hospital, HealthSource of Ohio, University of Kentucky Medical Center, and Dr. Sundhin Kanabar.

For the same reasons that the undersigned finds no error in the ALJ's reliance upon Dr. Leisgang's opinions, the undersigned finds no error in the ALJ's reliance upon Dr. Le's opinions.  Plaintiff fails to cite to any specific record that would contradict the substantial evidence that supports Dr. Le's opinions.  Plaintiff's premise – that the opinion of any physician or psychologist may not be relied upon if later records exist – implies that only the last dated medical opinion(s) could ever be considered.  Clearly, that is not the case.  Here, the ALJ discussed the medical evidence in detail, including nearly all of the records to which Plaintiff only broadly refers.  As was the case with the evidence that post-dates Dr. Leisgang's opinions, the evidence that post-dates Dr. Le's opinions is largely consistent with his opinions.

**III.  Conclusion and Recommendation**

For the reasons discussed herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED**, as it is supported by substantial evidence, and that this case be **CLOSED.**

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LEWIS P. PERRAUT,                  Case No. 1:12-cv-934

    Plaintiff,                             Barrett, J.
                                         Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).